IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREA FONSECA, <br> Plaintiff, <br><br> v. <br><br> HORNBLOWER CRUISES AND EVENTS, LLC, (FORMERLY KNOWN AS SPIRIT CRUISES LLC), <br><br> Defendant. | Civil Action No: 1:23-cv-3688 |

**COMPLAINT**

1. This is an action for unpaid wages and overtime, monetary damages, attorneys' fees and costs, and other appropriate relief, brought forth by Plaintiff Andrea Fonseca ("Plaintiff" or "Ms. Fonseca"), against her former employer Defendant Hornblower Cruises and Events ("Defendant," "Hornblower," or "the Company").

2. Defendant engaged in a consistent pattern of sexual harassment, deliberate negligence, wage/hour violations, interference with Plaintiff's statutory rights, and retaliatory behavior in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 et seq.; the Illinois Whistleblower Act, 740 ILCS 174/1 et seq.("IWA"); and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq.

3. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, liquidated damages, compensatory damages, punitive damages, and attorney's fees and costs, in addition to damages

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action arises under Title VII, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the FLSA, 29 U.S.C. § 201 et seq.

5. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as the state law claims derive from a common nucleus of operative fact with the federal law claim, and the claims are such that they would ordinarily be expected to be tried in one proceeding.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant is located and conducts business in this district and because the events or omissions giving rise to the claim occurred in this district.

## PARTIES

7. Plaintiff, Ms. Andrea Fonseca, is a citizen of Illinois and was employed by Defendant in this district.

8. Defendant, Hornblower (formerly known as Spirit Cruises), is a corporation organized under the laws of the State of Illinois with its principal place of business in this district. Defendant is an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

*Ms. Fonseca's Hire and Employment*

9. Ms. Fonseca began working at Hornblower on September 24, 2018, at the age of eighteen, as a part-time Sales and Guest Service Specialist. Her job at Hornblower was her first experience in any office workplace environment.

10. Ms. Fonseca's starting salary was $12.00 per hour. She was at all times an hourly employee entitled to minimum wage and overtime pay.

11. She was offered additional overtime hours that would have increased her pay substantially but declined to work overtime because she could not bear the additional exposure to the unlawful working conditions.

12. In some cases, Ms. Fonseca was forced to work overtime and was not given a choice. On some of these occasions, Defendant required her to work overtime off the clock and she was not compensated for all hours worked.

13. Over the next 2-3 years, and despite a longstanding environment of sexual harassment and retaliation, her abilities, dedication, and high performance resulted in her promotions. Ms. Fonseca's compensation increased to at least $18 per hour base wage at the time of her unlawful termination.

*Preexisting reputation of workplace sexual impropriety*

14. Upon Ms. Fonseca's arrival at Hornblower, several coworkers, including a team leader, warned her about the pervasive sexual overtones in the environment.

15. Ms. Fonseca was cautioned about certain individuals, including a training manager known to have relationships with interns, and another employee named Joelle Tatter, reputed for inappropriate comments and actions of a sexual nature.

16. Despite her concern, Ms. Fonseca remained at her first full-time job, hoping her coworkers were exaggerating about the work environment. Unfortunately, she quickly discovered the sexually predatory culture was more pervasive than she had been led to believe.

*Initial unwelcome sexual advances and harassment towards Ms. Fonseca*

17. As warned, Ms. Tatter and the training manager subjected Ms. Fonseca to a series of flirtatious comments and intrusive personal questions.

18. Ms. Fonseca faced continual harassment from Ms. Tatter, who stalked her around the workplace, initiating inappropriate sexual conversations.

19. The constant harassment took a toll on Ms. Fonseca, leading to distress and other adverse health consequences including anxiety, depression, and migraines.

*First reports to management, ineffective response, and escalation of harassment*

20. In 2019, Ms. Fonseca reported the harassment to her team lead, Lorna Ramirez, who attempted to pass her concerns up the chain where they were largely ignored by upper management.

21. In Ms. Fonseca's initial meeting with Director Benia Gurrola about her allegations, Director Gurrola's response was unsympathetic and dismissive, and centered around Director Gurrola's accusatory inquiries that presumed that Ms. Fonseca should have confronted Ms. Tatter directly.

22. Ultimately, Director Gurrola said she would take Ms. Fonseca's concerns to the People Team.

23. On information and belief, no investigation was conducted by the People Team; the People Team never interviewed Ms. Fonseca or interacted with Ms. Fonseca about her allegations.

24. Two weeks later, Director Gurrola reverted to Ms. Fonseca with what she knew or should have known was a superficial solution that did little to abate the harassment: physically separating Ms. Fonseca's workspace from Ms. Tatter's.

25. In this conversation, Director Gurrola also falsely assured Ms. Fonseca that she would not have to work directly with Ms. Tatter anymore.

*Management's retaliation and willful tolerance of ongoing sexual harassment*

26. After Ms. Fonseca's complaints, the harassment stopped for a few days, then escalated.

27. Ms. Tatter began following Ms. Fonseca, even into the bathroom, where she would make sexually suggestive noises. Ms. Tatter would also position herself near Ms. Fonseca, deliberately attracting attention through provocative behavior.

28. Ms. Fonseca also faced increasing retaliation from Director Gurrola, who made racially insensitive remarks and attempted to sabotage Ms. Fonseca's professional relationships within the company.

29. In spite of the company's awareness of the ongoing harassment, and despite Director Gurrola's past assurances, Director Gurrola willfully assigned Ms. Tatter to Ms. Fonseca's direct reporting line, putting Ms. Fonseca in a threatening position, and refused Ms. Fonseca's requests to distance herself from Ms. Tatter within this structure.

30. During the Covid-19 pandemic, the harassment continued remotely. Ms. Tatter sent inappropriate messages, propositioning Ms. Fonseca and then deleting the messages when she did not respond. Ms. Fonseca avoided engaging directly with Ms. Tatter to prevent the harassment from escalating.

31. At her breaking point, Ms. Fonseca again asked Director Gurrola for help, but her pleas were dismissed. Despite Ms. Fonseca's reluctance, Director Gurrola insisted that Ms. Fonseca was the one who needed to manage the situation through "performance management," offering restrictive advice on how she was and was not permitted to discuss the topic with her harasser.

32. Even after Ms. Fonseca obeyed this instruction, subjecting her to further trauma, she continued to face hostility from Ms. Tatter, Director Gurrola, and others.

33. This caused mental and physical health problems and interfered with her ability to work as she was forced to juggle an overwhelming workload and manage an understaffed team, all while attempting to shield herself from the unlawful working conditions that surrounded her.

*Unjust disciplinary actions and retaliation*

34. Shortly after a meeting with new VP Jeff Miller in which Ms. Fonseca cautiously disclosed her concerns about the working environment and Director Gurrola, Ms. Fonseca became the target of a retaliation campaign leading to her imminent termination.

35. The company attempted to derail Ms. Fonseca's performance by overwhelming her with an excessive workload and distractions while also expecting her to respond to work matters during her off days despite knowing that she could not lawfully do so because she is an hourly employee.

36. Knowing that she would be disciplined if she failed to respond to inquiries during her time off, Ms. Fonseca sometimes did so off the clock.

37. She began facing unsubstantiated and pretextual disciplinary allegations, including a last-minute schedule change of which she was not notified, and was later disciplined for clocking out at her originally scheduled time.

38. The management's actions were an effort to protect its hostile work environment while casting Ms. Fonseca as the problem, and to retaliate against Ms. Fonseca for having raised concerns about unlawful conduct.

*Pretext and retaliatory termination*

39. In October 2021, Defendant engineered false reasons for Ms. Fonseca's termination as pretext for its retaliation.

40. In one such incident, Ms. Fonseca forgot to clock in after her break on or about Tuesday, October 12, 2021, because she immediately got pulled into messages related to an urgent work issue affecting her short-staffed team.

41. Ms. Fonseca did not realize she had forgotten to clock in until she received an email from a manager, Isabella Prenta, the next day, when she was off from work. Ms. Prenta's email accused

Ms. Fonseca of leaving early without permission and demanded a response within an unreasonable timeframe.

42. Immediately after the unreasonable deadline passed, management pulled Ms. Fonseca into a meeting on the issue and Ms. Fonseca explained that she had simply forgotten to clock back in amidst Hornblower's grueling demands.

43. The Company chose to discipline her for this "infraction" and on information and belief, did not compensate Ms. Fonseca for the hours worked off the clock inadvertently.

44. In another such incident, on October 29, 2021, Ms. Fonseca clocked out at 5:05 pm, in line with her scheduled shift end at 5 pm.

45. Unbeknownst to Ms. Fonseca, who had not received a notification of any change in her schedule, management had unilaterally changed her shift end time to 6 pm that day, likely in an attempt to manufacture a false record to justify her impending retaliatory termination.

46. Over her protests and explanations, and despite no evidence of Defendant's having notified Ms. Fonseca of a schedule change, it then disciplined her for clocking out early.

47. On November 2, 2021, Defendant terminated Ms. Fonseca's employment in retaliation for her complaints of sexual harassment.

## PROCEDURAL HISTORY

48. Plaintiff timely filed a charge of discrimination with the Illinois Department of Human Rights on November 4, 2021, and with the Equal Employment Opportunity Commission (EEOC) on March 29, 2022, alleging sexual harassment, sex discrimination, and retaliation in violation of Title VII.

49. On March 14, 2023, the EEOC issued Plaintiff a Notice of Right to Sue, thus satisfying all administrative prerequisites to filing suit.

50. This action is brought within ninety (90) days of the EEOC's Notice of Right to Sue.

51. Plaintiff has complied with all conditions precedent and/or concurrent to bringing this action.

## CLAIMS FOR RELIEF

### COUNT I – SEXUAL HARASSMENT IN VIOLATION OF TITLE VII AND THE IHRA

52. Plaintiff incorporates by reference all preceding paragraphs.

53. Defendant, through its employees, subjected Plaintiff to a hostile work environment constituting sexual harassment, in violation of Title VII and the IHRA.

54. During the course of her employment, Plaintiff was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature by Joelle Tatter and others.

55. Despite repeated reporting of these incidents to superiors such as Lorna Ramirez and Benia Gurrola, the Defendant took no effective actions to remedy the situation.

56. Plaintiff suffered emotional distress, loss of wages, and other damages as a result of Defendant's unlawful actions.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including, but not limited to, loss of income, loss of benefits, and emotional distress.

### COUNT II – RETALIATION IN VIOLATION OF TITLE VII AND THE IHRA

58. Plaintiff incorporates by reference all preceding paragraphs.

59. Plaintiff engaged in protected activity under Title VII by reporting sexual harassment, and Defendant retaliated against Plaintiff by terminating her, in violation of Title VII.

60. Following these reports, Plaintiff was subject to adverse employment actions including termination, which were in direct retaliation for Plaintiff's reports of sexual harassment.

61. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including, but not limited to, loss of income, loss of benefits, and emotional distress.

### COUNT III - RETALIATION IN VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

62. Plaintiff incorporates by reference all preceding paragraphs.

63. Defendant retaliated against Ms. Fonseca in direct violation of the Illinois Whistleblower Act, 740 ILCS 174/20, when she disclosed to management and Human Resources the unlawful harassment and discrimination she was experiencing.

64. Defendant's retaliation against Ms. Fonseca included, but was not limited to, adverse employment actions such as sabotaging her work, creating a pretext to discipline and ultimately terminate her, and denying her advancement opportunities.

65. Defendant's actions were done knowingly, intentionally, with malice, reckless indifference, and/or with a conscious disregard to Ms. Fonseca's rights, thereby entitling her to exemplary and punitive damages.

### COUNT IV - UNPAID WAGES IN VIOLATION OF THE FLSA AND IWPCA

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Plaintiff was not subject to an exemption from the overtime requirements of the FLSA.

68. Plaintiff was entitled, under the FLSA and 820 ILCS 105/1-15, to receive overtime pay at one and one-half times Plaintiff's regular hourly rates for all hours worked in excess of 40 hours per week.

69. Defendant failed to pay Plaintiff for all hours worked in violation of FLSA and 820 ILCS 105/1-15.

70. Over the course of Plaintiff's employment, she worked at least 60-80 hours off the clock for which she was not paid wages, and a substantial portion of these off-the-clock hours were overtime payable at time-and-a-half.

71. As a direct and proximate result of Defendant's failure to pay Plaintiff's regular and overtime wages as required under the FLSA and 820 ILCS 105/1-15, Plaintiff has suffered lost wages.

72. Plaintiff is entitled to an award of liquidated damages in addition to her unpaid overtime wages because Defendant's failure to pay overtime was willful.

## COUNT V - RETALIATION IN VIOLATION OF THE FLSA AND IWPCA

73. Plaintiff engaged in protected activity under the FLSA and IMWL by asserting her rights to unpaid wages and overtime compensation.

74. Defendant retaliated against Plaintiff because of this protected activity in violation of 820 ILCS 105/12(a) and 29 U.S.C. § 215(a)(3).

## DEMAND FOR JURY TRIAL

75. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award back pay, front pay, and benefits lost as a result of Defendant's unlawful conduct;

B. Award compensatory damages for emotional distress, humiliation, and mental anguish suffered by Plaintiff;

C. Award exemplary and punitive damages to deter Defendant and others from engaging in unlawful conduct in the future;

D. Declare that Defendant's actions, conduct, practices, and/or omissions violated the FLSA and the IMWL;

E. Award back pay, including unpaid wages and overtime, plus an equal amount as liquidated damages;

F. Award reasonable attorneys' fees and costs;

G. Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

|  | /s/ Bonnie Shira Levine<br>Bonnie Shira Levine, Esq.<br>Verse Legal<br>135 Auburn Ave NE Suite 204<br>Atlanta GA 30303<br>Telephone: (404) 910-3732<br>Email: bonnie@verselegal.com<br>(Admission pro hac vice pending)<br><br>/s/ Rafael Lázaro<br>Rafael Lázaro, Esq.<br>*Local Counsel*<br>Lázaro Law Group, LLC<br>321 S. Plymouth Ct.<br>Suite 1250<br>Chicago, IL 60604<br>P. (312) 461-9900<br>rlazaro@lazarolawgroup.com<br>Illinois Bar No. 6283342<br>ATTORNEYS FOR PLAINTIFF |